This is N. Ray Charnetsky, Charnetsky v. LBJ Healthcare Partners. All right. Oh, we have someone appearing by video. Yes, may it please the court, Ken Catanzari appearing for the appellants, Leticia Charnetsky, Victor Charnetsky, the Charnetsky Family Trust, and Crewe Street Acquisitions, Inc., our LLC. Okay, you may proceed. I'd like to reserve seven minutes of my time for rebuttal, please. All right. With respect to this matter on appeal, I think we can succinctly state it as a dispute over the accrual rate of interest post-plan confirmation. This is really a two-party dispute as phrased. When the motion for confirmation of the plan was heard on November 19th, 2020, our expert, Mr. Thomas Tarter, provided discrete calculations that showed that the value of the three claims by the Charnetskys and Crewe Street as of November 19th, 2020 was $1,299,614. That amount, I'm rounding to $1.3 million for ease of illustration. The question was, did the appellants here receive at least the value of the holder's interest in the estate pursuant to 11 U.S.C. 1129 B2A I sub 2? The answer is no. Now, let me explain the complication here. The, we filed an opposition to the plans. The original joint plans disclosed simply that they were going to calculate the amount of payment due to the appellants based upon the petition date of their value of their obligations. The petition date was April 21st, 2016. They were not going to use the plan confirmation date of November 19th, 2020, some four years and roughly seven months. We objected and filed an opposition to the plan confirmation on November 5, based upon that singular dispute, essentially, that the difference was ignored, the fact that 4.7 years of additional interest accrual had not been considered in the value of the claims. And that was contrary to 1129 B2. In reply on November 12th, 2020, for the first time, Mr. Gebelt, in preparing the reply and submitting a declaration, extensive declaration, calculated in a sense that, and I want to be crystal clear on this, he confirmed all aspects of Mr. Tartar's calculations. He confirmed that the amount of the value of the claims, of the appellants, was $1.3 million. He confirmed that the reasonable interest rate to be accorded those claims was either 8% or 10%, depending upon the nature of the claim. So that was confirmed. He also- Councilor, excuse me. Okay, suppose we agree with you that you should have been awarded penancy interests. That's not why we're here. We're here because the district court dismissed it on, or dismissed it on equitable mootness grounds. And the fact is you did not move for a stay of the proceedings, and they've been substantially consummated. Isn't that right? Well, I would say the district court dismissed on the basis of finding that, to read it, quote, appellants never argued in their briefing that appellants' application of the interest rate to the original principle such that deferred payments over the life of the joint plan equal the confirmation value of appellants' respective claims. The appellate court found that we should have filed something in the opposition, but we didn't have an opportunity to file anything in the opposition. Excuse me, could you have asked for leave to submit supplemental briefing to the bankruptcy court? I know you, in your brief, you said you were taken by surprise by the opposition, but you never asked the bankruptcy court to file something to add to your argument. Could you have done that? Or was there some reason why you could not have? Well, I would respond to that this way. The confirmation hearing was November 19th. The reply brief is where this change, material change occurs. And the reply brief is filed November 12th. So there was a scant seven days between the two time periods. And the reply involved a great deal of calculations, which had to be looked at and adjusted. And not until the day of the hearing was it disclosed that we finally determined what they were doing to the claims. Mr. Anderton did raise that specifically. He pointed out that the post-confirmation accrual rate was based upon the original, in some instances, over 10 years old, principal balance of the obligations. Council, I'm not, maybe I missed it, I'm not hearing an answer to Judge Wardlaw's question about why you didn't seek a stay. As I understand it, the bankruptcy court order confirming the plan showed you that you were going to get hosed the way that you're now complaining about. And that now we're a couple of years down the road and you did not seek a stay, which you were certainly on notice that you were getting damaged, weren't you? We did not seek a stay. That's unequivocal. We say as much in our opening brief and reply brief. But a stay was not necessary on these facts because the difference involves monetary relief. A difference of roughly 250 to $300,000. It can be made up simply by an adjustment to the post-confirmation accrual rate based upon the 1.3 million of debt. But the simple, I mean, that's a mathematical calculation. Isn't the quote simply that either the plan has to not pay somebody else, it has to claw back something from already paid, or they have to come up with additional money, whether from winning the lottery or from being able to manage this and get a loan, I guess the theory is the balloon payment three years down the road. I mean, is that fair? It's not a question about the math of getting the math right. It's the question of at least some degree impacting a plan that is in the process of consummation. Let me address each specific aspect of what you just said. Okay, good. First of all, there's no clawback required, none at all, because this is a dispute between the two parties. All they need to do is do the calculation, have an accrual rate that results in a larger balloon payment at the end. That balloon payment at the end does not involve anyone else. It involves simply the appellants and the appellee. That is to say when they go to refinance their property, which will have equity because of the paydowns, there will be more than sufficient equity to pay the additional amount due. It's a two-party dispute. It involves a remedial payment of money. That's it. We're not asking for any change in the monthly payments they are making. We are not asking for any unwinding of the plan or change in plan classification. We are not asking for any change or amendment to the plan other than the balloon payment obligation that will appear at the end. I'd be asking for it, but if we rule in your favor, would the result immediately not be a remand down the line for the plan to be in some ways adjusted and reconfirmed? That is that, are you saying we could simply order them to pay you the money without involving the bankruptcy court at all? We've asked in our remedy, in the reply, we've asked for a remand for the purposes solely of the calculation of the amount of money due on the balloon payment. We would accept that. We believe you could order it, but we believe it would be appropriate for a remand to Judge Zollo who could then make an equitable adjustment. We're happy to do that. We do not see this as having required a stay. We do not see this as having required any adjustment, clawbacks, change in circumstances with anybody. It becomes a question of what is equitable between the debtors, the debtors, and the creditors, meaning the appellants and appellee. Equitable treatment required under 1129 was that we received the indubitable equivalent of our payments. We did not get that. The reply, the answering brief concedes it. They say, gee, if we have, if they get this, we'll have to pay them about an extra 50,000 a year. We don't ask for an extra 50,000 a year. We don't care about that. We're fine with waiting until the end, the balloon payment date. And after all, that is simply a dispute between us and them at that point, the appellants and the appellee. There's no other party involved. The people who should be involved, the obligors on the original obligation and the creditors holding that obligation, all of which were admittedly secured claims. If I go through each of the claims, the In re Pop case, unwound without a stay, a sale between two parties. The Bask, Baskar and Drake involved a taxi driver case that that deemed it that even that involving a lot of third parties did not require a stay, did not consider it impractical. In re Spiritus, in re Spiritus on all fours with us here, all that the order was, well, that the debtor can simply pay more money to the creditor. Thorpe, relief without unsettling the plan or the plan provisions. In re, they rely upon in re mortgages, but in re mortgages involve great changes in the status quo among various creditors, including those not before the court. We don't have that here. Our case is analogous, if not better than in re Silmar. In in re Silmar, the dispute between creditor and debtor was $1 million. We're talking about a $250,000 adjustment roughly at the end of the plan balloon payment, some three years hence, five years overall. Council, you wanted to save seven minutes. You're now down to four. I'm sorry. And if there are no more questions. But it's saved to four. Okay. Thank you. Okay. Who's going to argue first? Mr. Gabel, Gabel. Mr. Aronson's going to argue first. Okay, please proceed. Thank you, your honors. Robert Aronson and Nicholas Gabel on behalf of the Consolidated Appellees, LBJ Healthcare, Inc., Rosalinda Buenviaje and Brian Buenviaje. May it please the court. I'm going to address the court on I think the issue that is most in the forefront, which is equitable mootness. Mr. Gabel, as necessary, we'll deal with fair and equitable. Mr. Catanzari indicates that this is a two-party dispute. It is anything but a two-party dispute. It is not. What we're talking about with equitable mootness is fairness for all parties of creditors in this case. There are many other creditors in this case who are not before this court today. Reminding the court about the various standards of equitable mootness, which absolutely applies here. Equitable mootness is jurisdictional. That was stated in the FilterCorp case. As such, if jurisdiction. Is there a statute that strips us of jurisdiction? The FilterCorp case and actually a case that Mr. Catanzari cited, the Baker. So the Supreme Court has told us only Congress can strip our jurisdiction. So unless there's a statute, there's no jurisdiction stripping here. Your Honor, I think that this court has the power to address the issue of jurisdiction as to whether an appeal is moot or not. This appeal is moot, and let me explain why. There are four criteria. Whether we call it jurisdictional or not, if we agree with you on the four factors, you win. Correct, Your Honor. And very quickly, the four factors are whether a stay was sought. Clearly it wasn't. Number two, whether substantial consummation of the plan has occurred. I don't think there's any dispute here that substantial consummation has occurred. And then the third and fourth factors here, and by the way, there's one apt quote that I would like to cite for this court from the Roberts Farms case, which is a Ninth Circuit case, in which the court stated, quote, "'In our case, the appellants flunked the first step. "'They did not apply to the bankruptcy judge for a stay "'and have given no adequate reason "'on the record for doing so,' end quote." That's exactly what we have here. So appellants have flunked the first step. Substantial consummation is not an issue. Then we get to, I think, the core of what all the equitable cases are about. And that is a case-by-case determination as to whether or not you can put Humpty Dumpty back together again. That was a cite from one of the cases. Here, the relevant facts are as follows. The order of confirmation was entered in December of 2020. We are now roughly two years into a five-year plan. There's only three years left. Approximately $1,260,854 have been paid out pursuant to this plan. And I would refer the court to request for judicial notice exhibit one as to that fact. Finally, the appellants have come forward and admitted that they're seeking $250,000 in addition to what the plan already provided for. Plus would probably be interest on the interest. Correct, correct. So Mr. Kansry mentioned that it might be as much as $300,000, which is yet another surprise for us as is most of the arguments in this appeal. The debtors certainly do not have this amount of cash on hand. I would refer this court to the record. The debtors had roughly $3,000 left. But he says, oh no, they can pay it down the line in this balloon payment in five, well, three years from now. Let me cite two problems with that. Number one, appellants themselves have argued that this is impossible. They did that in the district court brief. And I would cite this court to the record here, excerpt of record 00568 to 00571. Appellants themselves have said adding this to the balance due on maturity is not possible. That's the only evidence on the record as to whether or not there's a capability on the part of these debtors to make that payment at the time of the balloon. So. If they are capable, then what? If it was remanded to the bankruptcy court and the bankruptcy court said, as opposing counsel argued, yes, in the refinancing, the balloon payment can be made. It's the result then. Well, Your Honor is talking about a hypothetical, which is really not a hypothetical, because the only evidence before this court is that the debtors cannot make that refinance happen, either now or five years from now. And the evidence you're saying is a statement that was made by opposing counsel in before the bankruptcy court. Yes, they had, before the district court. They had an extensive argument as to why it would be impossible for the 250,000. And did debtor make that argument? It's not an argument that we needed to refute, because it's true. So it wasn't refuted, you didn't make any counter, okay, thank you. I don't believe that we made that argument. We have a case called Sylmar Plaza, which says even if the plan has been substantially consummated, because in this case, the debtor of Platinum's claim is only for monetary damages against solvent debtors, this is not a case in which it would be impossible to fashion effective relief. So your argument is that based on the creditor's argument, it would be impossible for the bankruptcy court to fashion effective relief. Is that your argument? That is absolutely correct, Your Honor. It would be impossible for the bankruptcy court to do that. But there was no hearing on this issue, is that correct? All of the issues that appellant is now presenting to this court, or I should say none of the issues that are being presented to this court, were presented to the bankruptcy judge. These are all new issues on appeal. They have been presented for the first time on appeal. And I can get to the waiver argument in just a moment. Do you, standing here representing the debtors, say it would be impossible to fashion effective relief? Yes, that is our position. And I can go into that in more detail if you'd like, Your Honor. Would you explain that? Just, I mean, your opposing counsel says, well, it's now just between us and the debtor. They don't have to claw back. They don't have to, you don't have to redo the plan. We should have gotten this penancy interest, and now they just should pay it to us. Absolutely impossible, Your Honor. This is a skin-of-the-teeth plan. The debtor, skin of the teeth. Skin of the teeth, okay. Yes, I would point this. Not a technical term I was familiar with. Yes, I would again point this court to the evidence. And the evidence is the debtors had about $3,000 left after making all payments as of the effective date of the plan. There's no evidence that the debtor's financial position has changed at all. So the payments they're making are coming out of the profits of the business as it goes along? Correct, and there's no room for an additional seven. Well, I mean, using the word impossible, whenever somebody says that, I always blanch a little bit, because every business, something can happen that could make you a lot more money. The value of the underlying assets could get much bigger. Isn't sort of the better, is that it would be difficult. There is no indication it would be easy, and we have a bankruptcy plan that's in effect that is working, so leave it alone. Correct, Your Honors. And what we're talking about here is, remember, if you divide $250,000 by the 36 months left in this plan, you come up with roughly an additional $7,000 a month. Now- Well, they wanted it. Let's pass that. They wanted it at the end. Tell me about the other creditors. Are there people that you're making payments to every month now? Or are there other people who will get some of this balloon? Yes, Your Honor. There are at least three other secured creditors that I can think of, GBC Bank, the SBA, and there's one other lender on one of the other pieces of real property. And I might add that none of those creditors have raised the arguments regarding compound interest that the appellants have. Okay, but help me if I've got this right, then, that if it goes back to the bankruptcy judge, the bankruptcy judge is supposed to make a practical determination, as they are. Would it not be plausible that he would say, well, from what I can tell, if you have to cough up another 300,000, you don't have it in your pocket or can get it, so it's gotta come out of somebody else's hide, so let's redo the plan. Let's give everybody a 10% haircut. Would that be what a bankruptcy judge might have before him? If that's even possible, but it's gonna have to come from somewhere. So where that is is unclear. If it can't come from the payment at the maturity date, where is it gonna come from? The only option is to get it back from the current creditors. So there are three secured creditors. There are roughly $500,000 in administrative claims here. There was the property taxes, which we're not sure if they're paid off or not, but it's gonna have to come from somewhere, and if it's gotta come from these other creditors, I would note that those creditors are not present here in court today. Their rights are not being represented. It would be highly inequitable for the court to implement this new $250,000 without input from those parties who are not present before the court today. But if we remanded, would not then the district, the bankruptcy judge, have all of that? I mean, I thought that was the way bankruptcy usually operated. They'd say, okay, well now we're gonna do a new plan. Maybe they have to take a 10% haircut on their part, but so does everybody else. Correct, and then there's the process itself. And let me explain a bit about that. This is a major modification to a plan that is already two years in. Under section 1127 of the code, this requires the confirmation process to start from scratch. A new plan, a new motion for confirmation, a new disclosure statement, new balloting to creditors who have already relied on this plan being confirmed. This would be an immense burden on the debtor, on its counsel, on the third party creditors in this case who have been receiving payments for the last two years. It's simply not workable. In short, this additional $250,000 to $300,000 will crash the plan. There is no doubt about it. It will crash the plan. Now, I know Appellant has been very casual in his remarks. Well, you can do this, you can do that. But by his own admission, it can't be done at maturity. And if it can't be done at maturity, the only way to do this is gonna have to be from taking money away from the other creditors of this estate. They are not present here in court. Their rights would be severely impacted. They would be prejudiced by this. And at a minimum, by going through the confirmation process again itself. This is grossly unfair. What happened before the bankruptcy court, though? Because it does seem that the pendency interest issue was raised before the bankruptcy judge and in the papers and in oral argument, and then it wasn't awarded. I mean, was there a decision made by the bankruptcy judge? And no, they're not entitled to this? Here's what happened, Your Honor. This issue was never raised in the trial court, never. What was raised, and counsel indicates that somehow a one-sentence reference to compound interest, which is what they're really seeking, or the fact that they weren't aware of their payments until the time we filed our reply brief is contradicted by the record. The record is very clear. We presented a plan to the bankruptcy court. The plan stated the amount of their claim, the amount of the monthly payment, the amount of interest that yielded that monthly payment, and the balance due at the end of four years. If they thought they weren't being paid enough at that time, all the facts were in front of them to include in their objections to confirmation. And the bankruptcy judge gave them not one, but two chances to object to the plan. And they did file both of those objections, and I can recite that reference, if I can find it here in a second. When you referred to their saying one sentence, is this the oral argument at 882, where I'm reading their counsel is saying, because they're only giving us interest on the original principle nine, 10 years ago, not as to the value of our claim as of November 19th. Doesn't that sound like they're complaining about not getting interest on the interest? That one sentence throwaway, if you will, your honor. It's a long sentence. It's a long sentence, but I don't believe that does not rise to the level of briefing the issue or presenting it to the trial court judge. You agree that that exists? That exists, but we dispute that that is, in any way, shape, or form, preservation of an argument for appeal. They did not preserve this argument for appeal. It has been waived, and as such, this appeal should be dismissed on that basis as well. Not only equitable mootness, but a waiver as well. They argue they were surprised by, because I guess you presented the calculations, but did you argue that the interest should be on the original principle, not on the claim value as of the effective date of the confirmation plan, or did you just present a list of calculations? Did you make the argument before your reply? The issue of what appellants are due was very clear to them at the time we presented our plan to the court, and again, we hope. Did you make the statutory argument? If I understand opposing counsel, he says that Detter did not explain that the, whatever, the pendency interest under 1129 was not due, would not be paid. Your Honors, I would respond to that by saying, on pages 30 and 31 of their opening brief, I would refer the court to that. They indicate that the payments they're receiving don't equal the eight or 10% that the plan calls for. They're only being paid at the rate of four or 5%. Why didn't they know that at the time that they looked at the plan initially? Okay, so, but my question was, did you clarify that was your position based on the statutory language, or did you just provide calculations? We provided the calculations, and we provided the amount of the payment. The amount of the payment makes it clear how it was calculated. They had a financial expert involved in analyzing it. They knew, as of the time that we filed the plan, on September 9th, 2020, exactly what they were due. They are now claiming that they're not being paid enough, either on a monthly basis or on a whole. They knew what that argument was, or they should have known what that argument was, at the time that the plan was filed and that they were noticed. They knew about it well before we filed our reply brief. And on that basis, your honors, I think that they have both waived their argument with respect to compound interest that they're presenting to this court, and this appeal should be dismissed as equitably moved. Thank you. Thank you, counsel. All right, Mr. Ken Tenserate, you have four minutes left. You're on mute. Forgive me. I'm going to begin by addressing, shall we say, a misrepresentation of the record, that is, that I can unequivocally demonstrate. My colleagues, in their opposing brief, admitted that the general and secured creditors have all been paid. They've admitted that the state of California, the LA County taxes have been paid. They admit that there are other secured creditors. Those are the only other creditors with appellants, by the way, are secured creditors. In other words, they cited a company called GBC, which is a lender, and they also talked about the Small Business Administration, and a third, which is a creditor on the home of Mr. Buenviaja. The distinction I make to you is simple. Those, every one of those creditors is senior to appellants. Every one of them. That means there is absolutely nothing to support this baseless argument that they just made, that there'd have to be a clawback of any of their payment at the end on a refinance. That is not true. The people who would not get paid, if we have a large balloon payment, the people that would not be paid is only the Charnetskys, the appellants. Everyone else gets paid 100 cents on the dollar because they're senior to the Charnetskys. But excuse me, they said very unequivocally that it would be impossible to provide the extra 250,000 in a balloon payment. They said it is impossible for that relief. And it was conceded by your client in hearings. No, it wasn't conceded in the hearing, and the judge rejected our posture on that when he said, I'm going to let them proceed with the plan on the basis of a balloon payment. Our contention was at the hearing that maybe there'd have to be some demonstration of the gap shortfall of a potential, assuming a static value of the property, that there could be a gap shortfall in the amount of equity. The judge rejected that on the basis of their arguments. But you did, in fact, make the argument that your opposing counsel says you made. No, we didn't make the argument he's saying, and I challenge him on the record here. There is never a disclosure, never in any of the plans, never a disclosure that when they go to calculate interest accruing and to be paid post-confirmation that there would be a change up, shall we say a bait and switch, over the 1.3 million that they finally conceded was due only at the time of the reply declaration of Mr. Gabell, and only after they conceded one to 1.3 million, two, the interest rates by Mr. Tartar, and three, the amortization. Counsel, in terms of the argument you made, conceded probably is not the right word, but you did contend that the plan should not be confirmed even with this lower amount being paid to you. You contended that the plan should not be confirmed because it wasn't feasible. We made that contention, it was rejected by the court. Contended is the right word, not conceded, that's okay. Fair enough, I apologize. Is there anything in the record showing that the debtor could make this additional balloon payment? Sure, their own calculations on what they're claiming are the principal reductions on the first and seconds that are in front of the obligations that they owe to the appellants who are in third, second position with respect to the Boyne-Vallejo residence, and third and fourth positions with respect to the commercial property. There is simply no reason not to make this a two-party dispute, please. Well, let me just ask it this way, and I'm not a bankruptcy expert. I understand you're talking about seniority. Are you saying that it would simply be illegal for the district court to make a new plan that took anything away from anybody else, or simply that that's not the way it ought to happen? If the district court has it all before him, when you say they're senior, does that mean it's sacrosanct and there's no possible way that the judge could say the way to do this is to take some from here and some from there so you can get some of your money? Well, I would say it would be impossible because they have first and second trustees. They're protected by their securitized position, which is ahead of us. It's a simple mathematics. If the people in the tertiary secured creditor status, they're the ones who lose out. We should have the right to be in third and fourth position on the one loan and second position on the other. If there's to be a shortfall, put the balloon payment in. It becomes a two-party dispute between the appellants and the debtors only. And that's what's equitable. And we would say this transcript could be used against us at the time this is remanded and we go before the judge. No change would be made to those senior secured creditors. They get paid and we should get paid our additional accrued amount because they didn't comply with 1129. And they know it because we didn't know anything about this change up. Until Mr. Gebelt's November 12th declaration that was offered in the reply. That's the first time we saw it. We didn't see it any time before that. I refute any contention. They can't point to anything in the record that they ever suggested. Cancel, you're over your time. So thank you very much. Thank you. Charnetsky versus LBJ Healthcare Partners will be submitted. We'll take up Lee versus USDIS.
judges: Boggs, WARDLAW, IKUTA